UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL ACTION NO. 1:05CR-7-R

UNITED STATES OF AMERICA

v.

JOHNNY K. DUVALL, JR.

## MEMORANDUM OPINION

This matter is before the Court on a Motion to Suppress (Dkt. # 13).  A hearing was held

in open court on June 7, 2005.  This matter is now ripe for decision.

## BACKGROUND

Mr. Duvall is charged with violating 21 U.S.C. 841(a)(1) and 841(b)(1)(B)(vii) by

growing approximately 925 marijuana plants on the property surrounding his home in or near

Albany, Kentucky.  The evidence at the hearing indicated that on April 23, 2002, Mr. Duvall and

his wife were stopped at a "Traffic Safety Checkpoint" set up on KY 696 near their home by the

Kentucky State Police.  At that time, the Defendant was arrested for driving under the influence

of marijuana; several other troopers at the scene, after interviewing the Defendant's then-wife,

followed her to their home, where she allegedly consented to a search of the property.  During

the search, the troopers discovered the marijuana plants growing in various places around the

property, including in and around several abandoned buildings.  The evidence indicated that

several of the plants were visible from the road where the troopers had parked.  The officers then

took the statement of Mr. Duvall's wife, in which she denied any knowledge of the plants'

existence.

## ANALYSIS

Mr. Duvall's motion rests on two grounds: (i) that the stop of his vehicle at the "Traffic Safety Checkpoint" violated the Fourth Amendment because the checkpoint was set up for the sole, and unlawful, purpose of detecting evidence of his ordinary criminal wrongdoing; and (ii), that the warrantless search of his property and residence violated the Fourth Amendment because it was conducted without probable cause and without a valid exception to the warrant requirement.

### Stop at the Traffic Safety Checkpoint

Mr. Duvall argues that the Traffic Safety Checkpoint's use to detect evidence of ordinary (i.e., non-vehicular) criminal behavior violates the Fourth Amendment. For this proposition, he cites the Supreme Court's decision in *City of Indianapolis v. Edmond*, in which the court held unconstitutional a checkpoint program designed to detect narcotics. 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). In that case, the court specifically analyzed the "programmatic purpose;" that is, the primary purpose of the roadblock, and held that a roadblock that had as its primary purpose narcotics detection was "ultimately indistinguishable from the general interest in crime control." *Id.* at 44. The "programmatic purpose" of the roadblock at which Mr. Duvall was stopped was to "check motorists for compliance with motor vehicle laws including driving under the influence" and was intended "to provide for high visibility public safety service, focusing on vehicular equipment deficiencies, confirming appropriate registration of vehicles and the licensing of drivers." (General Order OM-E-4, Kentucky State Police, Government's Exhibit ___, at 1.) The court specifically noted that the holding in *City of Indianapolis v. Edmond* did not "alter the constitutional status of the sobriety and border checkpoints that we approved in *Sitz* and *Martinez-Fuerte*, or of the type of traffic checkpoint that we suggested would be lawful in *Prouse*." 531 U.S. at 47. (In *Delaware v. Prouse*, the Supreme Court

"suggested that a ... roadblock with the purpose of verifying drivers' licenses and registrations would be permissible." *Id.* at 37-38. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).) Mr. Duvall presented no significant evidence to suggest that the "Traffic Safety Checkpoint" was in any way inconsistent with these purposes or that the officers who designed the checkpoint had prior knowledge that he lived in the vicinity or suspected him of criminal activity. Although some of the Kentucky State Troopers who had been assigned to work the traffic stop were specially trained in narcotics detection, they did not use the narcotics-detecting canines with which they ordinarily worked. Further, Sergeant Walker, who set up the checkpoint, testified that KY 696 was selected because it was known in the area as a road frequently traveled by people driving across the state line to Tennessee in order to go to the bars located there. (Apparently the county in which Albany is located is dry, so travel into the adjoining county in Tennessee, which is not, is frequent.) He also testified that it was known to be a "high crime area" and that some of the complaints received about the area would fall into the category of "general crime control" as opposed to issues related to drunk driving and vehicle safety/registration/licensing. Nevertheless, his testimony was consistent with the objectives set forth in General Order OM-E-4, and there was certainly no testimony that suggested that the roadblock was in any way specifically related to suspected criminal activity by Mr. Duvall. Therefore, the stop was not made in violation of the Fourth Amendment.

### *Warrantless Search of Mr. Duvall's Property*

Mr. Duvall also argues that the evidence discovered at his home (including the 925 marijuana plants) must be suppressed because the search of his home was in violation of the Fourth Amendment. Specifically, he claims that the warrantless search was executed "without any exigent circumstances, and without valid consent." (Defendant's Motion to Suppress, at 2-

3).  The Supreme Court has held that "one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043-44, 36 L.Ed.2d 854 (citing *Davis v. United States*, 328 U.S. 582, 593--594, 66 S.Ct. 1256, 1261--1262, 90 L.Ed. 1453 (1946) and *Zap v. United States*, 328 U.S. 624, 630, 66 S.Ct. 1277, 1280, 90 L.Ed. 1477 (1946)).  See also *Katz v. United States,* 389 U.S. 347, 358, 88 S.Ct. 507, 515, 19 L.Ed.2d 576 (1967) and *Vale v. Louisiana*, 399 U.S. 30, 35, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970).

At the hearing, the evidence indicated that the officers based the decision to follow Mr. Duvall's wife home on their observation that he smelled of "green" marijuana; that is, marijuana while it is growing, which they indicated has a different odor than does burned marijuana.  They testified that when they arrived at the Duvall home, they saw four marijuana plants growing in buckets in the yard.  They then asked Mr. Duvall's wife for consent to search the premises, and she signed a form granting that consent.  At the hearing, she testified that she did not read the form that granted the consent to search, and that she did not know she was granting consent because the officer simply asked her if she understood what was going on.  The issue reduces to one of credibility, and in this case the Court believes that the police officers sought and obtained effective consent from Mr. Duvall's wife, allowing them to conduct a warrantless search within the confines of the Fourth Amendment.

## CONCLUSION

For these reasons, the Court finds that the arrest and search did not violate the Fourth Amendment and should not be excluded.  Therefore, Mr. Duvall's Motion to Suppress is **DENIED**.  An appropriate order shall issue.